J-S17039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
            Appellee   :
:
          v.        :
:
WILLIAM EARL SHANER     :
:
          Appellant   :      No. 1234 WDA 2022

Appeal from the Judgment of Sentence Entered September 15, 2022
In the Court of Common Pleas of Butler County
Criminal Division at No(s):  CP-10-CR-0000181-2021

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED: October 4, 2023**

Appellant, William Earl Shaner, appeals from the judgment of sentence entered in the Butler County Court of Common Pleas, following his bench trial convictions for the summary offenses of harassment and disorderly conduct.[1] We affirm Appellant's convictions and amend his flat sentence of 90 days' imprisonment, which is illegal.

The trial court set forth the relevant facts and procedural history of this case as follows:

> By Information filed on March 29, 202[1], [Appellant] was charged with one count of resisting arrest or other law enforcement [as a second-degree misdemeanor], 18 Pa.C.S.A. § 5104.  By Amended Information filed on September 15, 2022, [Appellant] was charged with two summary offenses: Count 1—Disorderly conduct, 18

---

[1] 18 Pa.C.S.A. §§ 2709(a)(1) and 5503(a)(1).

Pa.C.S.A. § 5503(a)(1) and Count 2—Harassment, 18 Pa.C.S.A. § 2709(a)(1).

A non-jury summary trial was held on July 8, 2022 for both [Appellant] and his mother, Co-Defendant Barbara A. Foster. Mrs. Foster was charged with disorderly conduct. At trial, Lt. David Villotti of the Butler City Police testified that on January 15, 2021, he and fellow officers went to the home of Mrs. Foster, to serve an arrest warrant on [Appellant] for a simple assault domestic violence incident involving [Appellant] and Mrs. Foster. The officers waited for Mrs. Foster, who was the victim of the assault, to return home. When she arrived home, Lt. Villotti and Officer Shulik approached Mrs. Foster and they explained that they were there to arrest [Appellant]. Mrs. Foster stated that she wanted to drop the charges and would not permit the officers inside her home. Mrs. Foster claimed that she did not know where [Appellant] was and that he was not inside her home. Lt. Villotti decided to apply for a search warrant in order to gain access to the house. At this point, one of the officers saw [Appellant] look through the window on the front door. Lt. Villotti asked Mrs. Foster once more for access to the house. She refused and was arrested for hindering the apprehension of [Appellant].

Lt. Villotti removed the lanyard with the house key from around Mrs. Foster's neck and she was escorted to a patrol car. Lt. Villotti unlocked the front door but was unable to open the door because it [was] blocked from inside. During this time, Lt. Villotti saw [Appellant] look through the front door window. Finally, the officers were able to push the door open. The officers were aware that a shotgun was located somewhere in the house and asked [Appellant] to show himself and his hands. [Appellant] refused. Eventually, [Appellant] came into Lt. Villotti's view and as he did not see a weapon, he holstered his firearm, drew his taser, and ordered [Appellant] to turn around and put his hands behind his back. [Appellant] refused and backed into the shadows (according to Lt. Villotti's testimony there were no lights on in the house). Both Lt. Villotti and Officer Shulik fired their tasers on [Appellant], who dropped. [Appellant] attempted to stand and continued to refuse to roll onto his stomach and put his hands behind his back. Therefore, the officers fired their tasers once again, however, [Appellant]

refused to roll onto his stomach. Two other police officers assisted and were able to handcuff [Appellant] after a one or two minute struggle.

Lt. Villotti testified that the officers struggled to place [Appellant] into the patrol car because [Appellant] refused to walk and during this entire encounter, [Appellant] was screaming and yelling that he would call the FBI and that the police had no right to be there.

At trial, [Appellant's] appointed counsel, Patrick Casey did not appear [on July 8, 2022] due to a family emergency. Mrs. Foster's defense counsel did cross-examine Lt. Villotti. The court continued the summary trial to September 15, 2022 when [Appellant's] counsel could be present.

The trial resumed on September 15, 2022 and began with Attorney Patrick Casey's ([Appellant's] counsel) cross-examination of Lt. Villotti. The Lt. testified that after [Appellant] was tasered and fell to the floor, Officers Doctor and Fennell entered the home and attempted to place [Appellant] into custody. However, [Appellant] refused to roll onto his stomach and show his hands, so there was a physical struggle, with [Appellant] wrestling back and forth with Officers Doctor and Fennell. Officer Shulik and Lt. Villotti stood back, ready to deploy their tasers if necessary. Lt. Villotti testified that [Appellant] was noncompliant during the entire encounter. The officers had to pick up [Appellant] and carry him to the patrol car and force him into the car.

Next, the Commonwealth called Sgt. Cheryl Litz of the Butler City Police who is a twenty-two (22) year veteran of the department. Sgt. Litz testified that the police officers arrived at Mrs. Foster and [Appellant's] residence around 4:00 p.m. on January 15, 2021 to execute an arrest warrant on [Appellant]. When the officers approached Mrs. Foster after she returned home from work, they asked the whereabouts of [Appellant]. Mrs. Foster stated that he was not in her house and did not know his whereabouts. During the encounter with Mrs. Foster, Sgt. Litz observed [Appellant] in the window of the front door. Sgt. Litz testified that the lanyard with the house key around Mrs. Foster's neck was removed. Sgt. Litz escorted Mrs. Foster, who uses a walker [and] did not cooperate, to a patrol car,

- 3 -

and was transported to the police station. Sgt. Litz explained that Mrs. Foster was removed from the scene because of the possibility of danger in that the police had prior knowledge that [Appellant] had a shotgun in the house.

Next, the Commonwealth called Officer Nathan Shulik of the Butler City Police. He has been employed by the department for over ten (10) years. On January 15, 2021, he was assisting Lt. Villotti and other city police officers with [Appellant's] arrest pursuant to a warrant. While Lt. Villotti was speaking with Mrs. Foster outside the front of her home, Officer Shulik observed [Appellant] in the window of the front door. After several minutes of the police unlocking the door, then [Appellant] locking it again and barricading the door from inside, the police were finally able to kick the front door open. Lt. Villotti and Officer Shulik entered the home, commanded [Appellant] to come forward and show his hands, and explained to him that he was under arrest pursuant to the warrant. The interior of the home was dark, the blinds closed and no lights on. [Appellant] refused and backed into the living room of this split-level home. As [Appellant] retreated, the Lt. and Officer Shulik went up the stairs to the living room and again commanded [Appellant] to show his hands and come forward. [Appellant] refused. Then, coincidentally, Lt. and Officer Shulik deployed their tasers at the same time. [Appellant] fell to the floor and two other assisting police officers, Officers Fennell and Doctor, attempted to place [Appellant] in custody. [Appellant] resisted, refused to show his hands, and was crying and yelling.

At the conclusion of the trials [on September 15, 2022], the court found [Appellant] guilty of both summary charges.[1] For the conviction of disorderly conduct (Count 1), [Appellant] was sentenced to pay the costs of prosecution, a $300 fine and serve 90 days in jail at the Butler County Prison. For the conviction of harassment (Count 2), [Appellant] was sentenced to pay the costs of prosecution, a $300 fine, and serve not less than 90 days in jail, concurrent with Count 1.

___

[1] Co-Defendant Mrs. Barbara Foster was found not guilty of disorderly conduct by the court.

(Trial Court Opinion, filed 12/12/22, at 1-3) (internal citations omitted).

Appellant timely filed a notice of appeal on October 14, 2022. Thereafter, the

court ordered Appellant to file a concise statement of errors complained of on

appeal per Pa.R.A.P. 1925(b); Appellant complied on November 18, 2022.

Appellant raises the following issues for our review:

> Whether the trial court erred or abused its discretion in failing to declare a mistrial when Appellant's non-jury trial commenced without his appointed counsel present and missing the in-person direct and cross-examination of the Commonwealth's first witness?

> Whether the trial court erred or abused its discretion when it denied [Appellant's] motion for judgment of acquittal due to the Commonwealth having failed to file an amended information, signed by an attorney for the Commonwealth, charging the summary offenses of which Appellant was convicted prior to the commencement of trial?

> Whether the Commonwealth presented sufficient evidence to sustain the conviction of disorderly conduct against Appellant when the alleged actions by Appellant took place within his private residence and not in a public area?

> Whether the Commonwealth presented sufficient evidence to sustain the conviction of harassment when the Commonwealth did not produce testimony delineating specific instances of Appellant striking, shoving, or kicking the officers in question?

> Whether the sentence imposed was an illegal sentence in that it sentenced Appellant to a flat term of imprisonment without a minimum or a maximum term?

(Appellant's Brief at 7-8).

After a thorough review of the record, the briefs of the parties, the

applicable law, and the well-reasoned opinion of the trial court, we conclude

that Appellant's issues one through four merit no relief for the reasons stated in the trial court opinion. We further agree with the trial court that Appellant's fifth issue merits limited relief from this Court in the nature of amending his sentence.

Specifically, regarding Appellant's first issue, the trial court explained that the first day of trial on July 8, 2022, that proceeded without Appellant's counsel present, was centered on Mrs. Foster's case. The record includes the direct testimony of Lt. Villotti from this date and the cross-examination by Mrs. Foster's counsel. Appellant was informed that his counsel, Attorney Casey, was not present due to a family emergency, and Appellant requested that trial be continued to a date when Attorney Casey could be present. Once trial resumed on September 15, 2022, Attorney Casey confirmed that he had an opportunity to read the transcript from the first day of trial that he had missed. Attorney Casey did not raise any objections. Attorney Casey then had an opportunity to cross-examine Lt. Villotti. Under these circumstances, Appellant failed to establish a showing of manifest necessity that would have warranted the trial court to declare a mistrial *sua sponte*. (**See** Trial Court Opinion at 3-4).

With respect to Appellant's second issue, the Commonwealth initially charged Appellant with resisting arrest on March 29, 2021. The Commonwealth filed a motion to amend on October 27, 2021, stating that the allegations supported a charge of the lesser-included offense of disorderly

conduct as a third-degree misdemeanor. On April 6, 2022, the court granted the motion to file an amended information. On June 3, 2022, the Commonwealth filed another motion to amend seeking to amend Appellant's charges to disorderly conduct as a summary offense and harassment as a summary offense. The court granted the motion that day, which was docketed on June 15, 2022. At the close of trial on September 15, 2022, the Commonwealth filed the amended information, charging Appellant with the summary offenses of harassment and disorderly conduct.[2] Based on the Commonwealth's motion of June 3, 2022 and the court's order granting the requested relief, Appellant had notice of the charges the Commonwealth would pursue against him at trial. Significantly, the crime alleged in the original information involved the same basic elements and evolved out of the same factual situation as the crimes specified in the amended information. Therefore, Appellant suffered no prejudice by the amendment of the information. (**See** Trial Court Opinion at 4-5).

Concerning Appellant's third issue, the record shows that after a struggle took place inside the residence to place Appellant in handcuffs,

---

[2] Appellant raised a challenge to the amended criminal information for the first time in his Rule 1925(b) statement. Consequently, Appellant's second issue is waived. **See Commonwealth v. Jackson**, 215 A.3d 972 (Pa.Super. 2019) (explaining that appellant waived challenge to amendment to criminal information where he failed to articulate specific objection at appropriate stage of proceedings before trial court). Moreover, even if Appellant had preserved this claim, we would agree with the reasoning of the trial court that this issue merits no relief.

Appellant continued to refuse to comply with the officers' commands. Once outside the house, the four police officers carried or dragged Appellant to the patrol car, during which time Appellant was yelling, screaming, and attempted to free himself. Under these circumstances, the court found that Appellant's behavior outside of the house met the elements required for disorderly conduct. (*Id.* at 5).

Regarding his fourth issue, Lt. Villotti testified that Officers Doctor and Fennell wrestled with Appellant to place him on his stomach and handcuff him. Thus, the record shows that Appellant subjected the officers to physical contact, sufficient to sustain Appellant's harassment conviction. (*Id.* at 6).

As it pertains to Appellant's final issue, the trial court acknowledged that Appellant's flat sentence of 90 days' imprisonment at each count was illegal.[3] Nevertheless, the court noted that because the trial court intended to impose the maximum sentence,[4] this Court can amend the sentence to include a minimum term equal to one-half of the maximum. (*Id.*)

We agree with the reasoning of the trial court as set forth above. Accordingly, we affirm Appellant's convictions based on the trial court's

---

[3] The Commonwealth also concedes that the flat sentences imposed were illegal. (*See* Commonwealth's Brief at 19).

[4] The maximum sentence for each of Appellant's summary convictions is 90 days (*see* 18 Pa.C.S.A. § 1105), so it is clear the court intended to impose the maximum sentence.

opinion.[5] Further, we amend Appellant's sentences at each count to reflect a term of 45-90 days' imprisonment, to run concurrent with each other.[6]

Judgment of sentence is affirmed as amended.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/4/2023

---

[5] We correct a citation error on page five of the court's opinion. The correct citation for **Commonwealth v. Rose** is 463 Pa. 264, 344 A.2d 824 (1975).

[6] **See Commonwealth v. Duda**, 831 A.2d 728 (Pa.Super. 2003) (affirming judgment of sentence but amending flat sentence of 90 days' imprisonment for summary harassment to include minimum term equal to one-half of maximum sentence or 45 days' imprisonment, where record confirmed that court clearly intended to impose maximum sentence).